```
_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
                 COUNSEL/PARTIES OF RECORD

              DEC 2 8 2010

          CLERK US DISTRICT COURT
            DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RANDAL DOCK,                           )
                                       )
            Plaintiff,              )
                                       )      2:10-cv-00275-RCJ-LRL
     vs.                              )
                                       )
STATE OF NEVADA et al.,                )         **ORDER**
                                       )
           Defendants.            )
_____)

      This case arises out of allegations of sexual abuse and the deprivations of liberty and property Plaintiff suffered due to them.  Pending before the Court are Defendants Clark County's and Dona Lisa Ford's ("County Defendants") Motion to Dismiss (ECF No. 5) and Motion for Hearing on County Defendants' Motion to Dismiss Original Complaint, or, in the Alternative, Motion to Dismiss Amended Complaint (ECF No. 10).  For the reasons given herein, the Court grants the motions.

## I.      FACTS AND PROCEDURAL HISTORY

      Plaintiff is the natural father of a minor child. (Am. Compl. ¶ 10).  Shortly after Plaintiff filed a motion in state court to terminate child support, the child's mother reported alleged sexual abuse of the child by Plaintiff to the Las Vegas Metropolitan Police Department. (*Id.* ¶ 11).  Plaintiff maintains that the sole evidence of abuse was the mother's allegations, unfounded by any medical or documentary evidence. (*Id.* ¶¶ 12–13, 15).  Plaintiff alleges that the mother

1    "manipulat[ed]" the child's testimony, although Plaintiff does not explicitly state whether the

2    child testified against him. (*See id.* ¶ 14). Defendant Dona Lisa Ford, a caseworker for the Clark

3    County Department of Child and Family Services, which is in turn a department of Defendant

4    Clark County, investigated the claims and issued a no-contact order and non-judicial "Safety

5    Assessment Plan" without a hearing. (*Id.* ¶¶ 3–4, 17–18). Ford advised the mother to obtain a

6    temporary protective order, which a judge issued, resulting in the revocation of Plaintiff's

7    firearm. (*Id.* ¶¶ 19–20). Ford also convinced the judge at Plaintiff's child support hearing to

8    "issue a continuing no contact order." (*Id.* ¶ 25).[1] Plaintiff believes his name was placed on the

9    Central Registry for Child Abusers. (*Id.* ¶ 28). Plaintiff claims never to have had any reasonable

10    opportunity to be heard, (*id.* ¶ 29), and that Ford and Clark County ignored evidence that

11    impugned the mother's credibility, specifically a "court decision" from an unidentified court, (*id.*

12    ¶ 30). Eventually, proceedings were dismissed with prejudice in juvenile court, and criminal and

13    administrative proceedings against Plaintiff were dismissed in 2008. (*Id.* ¶¶ 32, 34–35).

14        Plaintiff sued Defendants State of Nevada, Clark County, and Ford in the Clark County

15    District Court on January 19, 2010. Plaintiff did not sue the mother. The Complaint lists six

16    causes of action: (1) violations of substantive due process and procedural due process rights

17    pursuant to 42 U.S.C. § 1983 (against Ford); (2) failure to train pursuant to 42 U.S.C. § 1983

18    (against the State of Nevada and Clark County); (3) civil conspiracy (against Ford and Clark

19    County); (4) negligence (against Ford and Clark County); (5) negligent infliction of emotional

20    distress ("NIED") (against Ford and Clark County); and (6) injunctive and declaratory relief.

21    Defendants removed and filed the present motion to dismiss. A response was due on April 1,

22    2010, but instead of responding, Plaintiff filed the Amended Complaint ("AC"). The AC

23    provides no meaningful amendment to correct alleged deficiencies noted in the motion to

24    ――――――――――

25    [1]It is not clear if this was an extension of the original order allegedly issued by Ford
herself, a new order, or the only order.

1   dismiss.  It is amended only in the following ways: (1) Doe and Roe defendants are removed; (2)

2   Ford is alleged to have acted "at the direction of Clark County," (*see* Am. Compl. ¶¶ 4, 8, 41,

3   ECF No. 8), which is already implied in the original Complaint; (3) Plaintiff adds a legal

4   conclusion that Ford's conduct involved no discretion, (*see id.* ¶ 8); and (4) Plaintiff has changed

5   the damages allegations from "in excess of $10,000" to "in an amount according to proof," (*see*

6   *id.* ¶¶ 42, 53, 60, 65, 70).  Plaintiff has not bothered to alter the prayer for damages accordingly.

7   (*See id.* at 11:11–13).  These de minimis amendments are not sufficient to render the present

8   motion to dismiss moot, and the Court therefore grants the Motion for Hearing on County

9   Defendants' Motion to Dismiss Original Complaint (ECF No. 10) and will rule on the Motion to

10   Dismiss (ECF No. 5) directly.

11   **II.      LEGAL STANDARDS**

12           **A.      Rule 12(b)(6)**

13           Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

14   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

15   what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

16   (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

17   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

18   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

19   581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to

20   state a claim, dismissal is appropriate only when the complaint does not give the defendant fair

21   notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v.*

22   *Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a

23   claim, the court will take all material allegations as true and construe them in the light most

24   favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The

25   court, however, is not required to accept as true allegations that are merely conclusory,

1 unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State*

2 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with

3 conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is

4 plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v.*

5 *Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

6      "Generally, a district court may not consider any material beyond the pleadings in ruling

7 on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the

8 complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

9 *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents

10 whose contents are alleged in a complaint and whose authenticity no party questions, but which

11 are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

12 motion to dismiss" without converting the motion to dismiss into a motion for summary

13 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of

14 Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer*

15 *Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers

16 materials outside of the pleadings, the motion to dismiss is converted into a motion for summary

17 judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

18     **B.**     **Declaratory Relief**

19     Federal courts may enter declaratory judgments:

20         In a case of actual controversy within its jurisdiction . . . any court of the
United States, upon the filing of an appropriate pleading, may declare the rights and

21     other legal relations of any interested party seeking such declaration, whether or not
further relief is or could be sought. Any such declaration shall have the force and

22     effect of a final judgment or decree and shall be reviewable as such.

23 28 U.S.C. § 2201. However, such judgments may not cross the line into advisory opinions; there

24 must be a case or controversy cognizable under Article III of the Constitution. *Calderon v.*

25 *Ashmus*, 523 U.S. 740, 745–46 (1998). In other words, the harm alleged must be complete or

1   imminent, not "hypothetical." *See id.* at 746.

2       **C.**    **42 U.S.C. § 1983**

3       The Eleventh Amendment prohibits suits against states in federal court without their

4   consent.  In a parallel but independent analysis, 42 U.S.C. § 1983 only creates jurisdiction for

5   suits against "persons."  Neither a state nor its employees acting in their official capacities are

6   "person[s]" who can be sued under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66

7   (1989), but state employees may be sued in their individual capacities as "persons" under § 1983,

8   *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  State employees sued in their individual capacities for

9   injunctive relief or for damages to be paid out of their private resources are not protected by a

10  state's Eleventh Amendment immunity. *Edelman v. Jordan*, 415 U.S. 651, 664–65 (1974); *Ex*

11  *parte Young*, 209 U.S. 123, 159–60 (1908).  Employees of Clark County and its departments are

12  not employees of the State of Nevada but of a municipality, Clark County, and they may

13  therefore be sued in their individual or official capacities under § 1983, and Clark County may

14  itself be sued. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

15      In order to hold a municipality liable under *Monell* for declaratory, injunctive, or

16  monetary relief, the allegedly unconstitutional actions must have been pursuant to an official

17  municipal policy, ordinance, regulation, or officially adopted decision. *Id.* at 690–91.  The Ninth

18  Circuit has expounded:

19          In a *Monell* claim, there are three ways to show a policy or custom of a
        municipality: (1) by showing a longstanding practice or custom which constitutes the

20          standard operating procedure of the local government entity; (2) by showing that the
        decision-making official was, as a matter of state law, a final policymaking authority

21          whose edicts or acts may fairly be said to represent official policy in the area of
        decision; or (3) by showing that an official with final policymaking authority either

22          delegated that authority to, or ratified the decision of, a subordinate.

23  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (citations and internal

24  quotation marks omitted).  Prospective injunctive relief may be had against a municipality's

25  enforcement of an allegedly unconstitutional state policy even if the municipality itself has only

                                  Page 5 of 11

1   adopted the policy through enforcement. *Chaloux v. Killeen*, 866 F.2d 247, 250–51 (9th Cir.

2   1989). In any case, "[l]iability under section 1983 arises only upon a showing of personal

3   participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A

4   supervisor is only liable for constitutional violations of his subordinates if the supervisor

5   participated in or directed the violations, or knew of the violations and failed to act to prevent

6   them. There is no respondeat superior liability under section 1983." *Id.*

7        Additionally, individuals in their private capacities (but not municipalities or individuals

8   in their official capacities) enjoy qualified immunity against claims of constitutional violations

9   where the right alleged to have been violated was not clearly established at the time of the alleged

10   violation. *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) (citing *Owen v.*

11   *City of Independence*, 445 U.S. 662, 638 (1980)). Under *Saucier v. Katz*, a district court uses a

12   two-step procedure to determine whether an official is entitled to qualified immunity: (1) the

13   court asks whether there has been a constitutional violation; and (2) if so, the court asks whether

14   the state of the law at the time of the alleged violation was clear such that a reasonable person in

15   the defendant's position should have known his actions violated the plaintiff's rights. 533 U.S.

16   194, 201 (2001). Under *Pearson v. Callahan*, it is within the sound discretion of a district court

17   which *Saucier* step to employ first; the court may examine the second step first in order to avoid

18   constitutional holdings where a defendant will be free from liability due to qualified immunity in

19   any case. 129 S. Ct. 808, 818 (2009).

20   **III.**    **ANALYSIS**

21        **A.**    **Immunity**

22        Defendants argue that many of the claims are barred by various immunities. Defendants

23   argue that all § 1983 claims against Ford should be dismissed based on qualified immunity, that

24   all state law claims against Ford should be dismissed based on discretionary immunity, that

25   causes of action two through five should be dismissed as against Clark County insofar as they

1   rely on a respondeat superior theory, and that Ford and any prosecutors enjoy quasi-judicial

2   immunity against any claims arising out of their prosecution of criminal or civil proceedings

3   against Plaintiff.  Defendants are correct on all counts.

4          Ford enjoys discretionary immunity for her investigative actions as a child protective

5   services worker, because those acts involve discretion and are grounded in social policy. *See*

6   *Martinez v. Maruszczak*, 168 P.3d 720, 728–30 (Nev. 2007); *Foster v. Washoe Cnty.*, 964 P.2d

7   788, 794 (Nev. 1998).  The claims against Ford are also barred by quasi-judicial immunity.

8          Defendants argue that causes of action two through five must be dismissed as against

9   Clark County insofar as they rely on a respondeat superior theory. *Taylor*, 880 F.2d at 1045.  It is

10  correct that the third through fifth causes of action for civil conspiracy, negligence, and NIED,

11  respectively, rely on a respondeat superior theory, because they are based on the individual

12  actions of the County's employees.  These causes of action are dismissed as against the County

13  for this reason.  However, Plaintiff necessarily alleges policies or officially adopted decisions of

14  the County in the second cause of action for failure to train.  This cause of action does not rely on

15  a respondeat superior theory and will not be dismissed as against the County under *Taylor*.  In

16  summary, only the second cause of action for failure to train under 42 U.S.C. § 1983 survives

17  *Taylor* as against the County.

18         The question remains whether immunity should stretch so far as to immunize a

19  municipality itself for its alleged deliberate indifference in failing to train an assistant of the

20  courts, such as a child protective services worker, simply because the latter enjoys immunity for

21  the alleged unconstitutional acts.  The Court finds that it does.  Last year, the Supreme Court

22  unanimously reversed the Ninth Circuit in holding that a district attorney's office enjoys absolute

23  immunity against failure-to-train claims arising out of one of its attorney's prosecution-related

24  actions. *See Van de Kamp v. Goldstein*, 129 S. Ct. 855, 862 (2009).  The *Van de Kamp* Court

25  noted that with respect to prosecution-related actions, an office's "*general* methods of

1   supervision and training" are not distinguishable from direct supervisory decisions. *Id.* at 862.

2   This is a commonsense ruling. If the rule were otherwise, a plaintiff could easily circumvent the

3   immunity doctrines by suing a municipality directly and arguing it "failed to train" the judge

4   and/or prosecutor. The same reasoning applies to a child protective services worker acting in her

5   investigative capacity. The Court therefore grants the motion to dismiss as to the second cause of

6   action.

7         Next, Defendants argue that Ford and any prosecutors enjoy quasi-judicial immunity

8   against claims arising out of their prosecution of criminal proceedings in the district court or civil

9   proceedings in the juvenile court.[2] Defendants are correct. State (and presumably county)

10  employees engaged in child protective services have quasi-judicial immunity from suit according

11  to the following parameters:

12        State employees engaged in child protective services are entitled to
      quasi-judicial immunity when they provide information to the court (e.g., reports,
13    case plans, testing evaluations and recommendations) pertaining to a child who is or
      may become a ward of the State. We do not intend the aforementioned examples to
14    be an exclusive list. Rather, they demonstrate some of the duties protective service
      workers engage in that are integral to the court's decision-making processes. When
15    a state agency or its employees provide their decision-making expertise to the court,
      they act as an arm of the court and are entitled to absolute quasi-judicial immunity.
16    However, once the court makes a decision ratifying the recommendations of the state
      agency (e.g., placement in foster care, need for further medical evaluation, etc.), the
17    state agency and its employees are no longer acting as an arm of the court. Rather,
      their function in carrying out the order of the court falls within the executive branch
18    of government and pursuant to their statutory duties. Specifically, quasi-judicial
      immunity does not apply to state agencies or their employees for the day-to-day
19    management and care of their wards.

20        This conclusion accords with the analysis set forth by the United States
      Supreme Court in *Butz* and followed by this court in *Duff.* Specifically, child welfare
21    workers engaged in protective service evaluations function as advisors to the court.
      They provide recommendations based upon their expertise and judgment upon which
22    the courts base their determinations. Thus, in this limited capacity, child welfare
      workers provide an invaluable and singular service to the court, offering

23

24        [2]Plaintiff's fourth cause of action for "negligence" is better characterized as a malicious
    prosecution claim. Plaintiff names no prosecutors from either the criminal or civil proceedings
25  against him, but only Ford and Clark County.

1  recommendations within adversarial proceedings between the state and the natural
2  parent.  Further, were child welfare workers subject to personal liability for every
   recommendation made to the court in these situations, the judicial system would be
3  overburdened with civil suits and such liability would likely prevent competent
   persons from taking positions as child welfare workers as the threat of lawsuit would
4  discourage independent action.  Additionally, opening the gate to personal liability
   for recommendations made to the court by child welfare workers would impede the
5  resolution and finalization of petitions seeking the safe placement of this State's
   children.  Finally, adequate procedural safeguards exist within the system to protect
6  against unconstitutional conduct by a state employee or agency which precludes the
   necessity for civil liability for recommendations made to the court on the issues of
7  child welfare (i.e., appellate review, professional disciplinary proceedings, etc.). *See*
   *Butz*, 438 U.S. at 513–17, 98 S. Ct. 2894; *Duff*, 114 Nev. at 569, 958 P.2d at 85.

8  *State v. Second Judicial Dist. Ct. ex rel. County of Washoe*, 55 P.3d 420, 426–27 & n.42 (Nev.

9  2003).  Plaintiff alleges the following acts of wrongdoing by Ford: malicious or negligent

10  investigation of the abuse claims against him; issuance of a no-contact order in conjunction with

11  a non-judicial "Safety Assessment Plan"; and assistance with Plaintiff's prosecution in district

12  and/or juvenile court.  Ford clearly enjoys quasi-judicial immunity from the claims in this case,

13  as they arise out of her investigation and recommendations to the juvenile and/or criminal courts.

14  None of the actions complained of arise out of the day-to-day management or care of the minor

15  child in this case, for which there would be no quasi-judicial immunity.

16      In conclusion, Ford and Clark County are immune from all claims against them.  The

17  State of Nevada has not joined the present motion.[3]  Therefore, after the immunity analysis two

18  causes of action remain: (1) failure to train against the State of Nevada; and (2) injunctive and

19  declaratory relief against all defendants.

20      **B.    Failure to Train (State of Nevada)**

21      Constitutional harm from a municipality's failure to train its officers is cognizable under

22  § 1983 and *Monell*, but the level of culpability is higher than that under a state law failure-to-

23  ───────────────

24      [3]The State of Nevada has waived its common-law sovereign immunity by statute, *see*
   Nev. Rev. Stat. § 41.031(1), and although it retains its Eleventh Amendment protection from suit
25  in federal court generally, *see* § 41.031(3), it has waived it in this case by consenting to removal,
   *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002).

train claim based on a negligence theory:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). In order for the second cause of action to survive the present motion, Plaintiff must make plausible that the State of Nevada's training of Ford as a child protective services caseworker was so lacking that it amounted to "deliberate indifference."

Plaintiff alleges that neither Clark County nor the Department of Child and Family Services had any training budget or staff, that the State of Nevada provided no funding to either Clark County or the Department of Child and Family Services, and that neither the State of Nevada nor Clark County provided any training to employees such as Ford, although they both had a duty to train her. (Am. Compl. ¶¶ 47–50). This allegation is insufficient to make out a claim for intentional violation of a constitutional right or deliberate indifference. In any case, the State of Nevada is immune from this claim under *Van de Kamp*, and Plaintiff has abandoned his claims as against the State of Nevada. 129 S. Ct. at 862.

**C.     Injunctive and Declaratory Relief**

Plaintiff originally sought a declaration that Nevada Revised Statutes ("NRS") sections 432B.300, 432B.310, and 432.100—the sections of the code that establish and govern the Central Registry for the Collection of Information Concerning the Abuse or Neglect of a Child—are unconstitutional under the Due Process Clause of the Fourteenth Amendment. He also sought an injunction against their further implementation. At oral argument, the parties agreed that Plaintiff could only bring this constitutional claim against the State of Nevada and that Plaintiff and the State had stipulated to dismiss Plaintiff's claims against the State.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Hearing on County Defendants' Motion to Dismiss Original Complaint (ECF No. 10) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 5) is GRANTED.

IT IS SO ORDERED.


Dated this 27th day of December, 2010.

ROBERT C. JONES
United States District Judge